DECISION
Before this Court is the plaintiffs' Motion for a New Trial. The plaintiffs move for a new trial on the grounds of erroneous evidentiary rulings and instructions to the jury.
The plaintiffs' medical malpractice action against John Solomon, Jr., D.O. (defendant) was tried before a jury in December of 1997. The plaintiffs alleged that the defendant negligently failed to diagnose plaintiff Peter Marsh's colon cancer, resulting in an eight month delay in the diagnosis and treatment of his illness. Shortly after diagnosis, Mr. Marsh's cancerous tumor was surgically removed. The plaintiffs alleged that this delay caused the cancer to advance to a stage at which there is a high probability of cancer recurrence and death. The plaintiffs also brought counts for spoliation of evidence, alleging that the defendant had altered medical records in regard to plaintiff Peter Marsh. At the close of evidence, this Court dismissed Counts V-VII on spoliation of evidence. On December 9, 1997, the jury found in favor of the defendant on the remaining malpractice claim.
On December 17, 1997, the plaintiffs filed the instant motion for a new trial. In their motion the plaintiffs assert that the Court committed error in (1) failing to sustain the plaintiffs' objection to defense counsel's reference to Counts V-VII of the amended complaint; (2) informing the jury prior to closing arguments that it had dismissed Counts V-VII on spoliation of evidence; (3) refusing to give plaintiffs' proposed instruction number 17; (4) referring to plaintiff Peter Marsh's alleged noncompliance in instructing the jury on the defendant's defense; (5) allowing the defendant to testify about his treatment of plaintiff Peter Marsh in regard to Peter Marsh's rectal complaints and the defendant's prescribing Anusol, even though the defendant had no memory of these treatment events; (6) precluding testimony by plaintiff Peter Marsh that he would have gone for a sigmoidoscopy if he had been referred by the defendant; and (7) refusing to instruct the jury regarding the loss of society and companionship claims of Sarah and Jonathan Marsh.
In regard to the first two assignments of error, the plaintiffs argue that the mention of the spoliation of evidence counts (Counts V-VII) to the jury constituted prejudicial error. The plaintiffs state that the jury did not need to hear that the spoliation of evidence counts had been dismissed by the Court. The plaintiffs also argue that defense counsel should not have referred to Counts V-VII in questioning the defendant, as this prejudiced the jury. The defendant responds that the plaintiffs elected to proceed on Counts V-VII at trial and should not be allowed to claim prejudice simply because those counts were not successful. The defendant says that the jury would speculate as to why the defendant put on evidence pertaining to the spoliation of evidence counts, if the jury were not informed of those counts.
In Rhode Island, a judge's reference to a portion of the complaint is not necessarily grounds for reversible error. SeeCooper v. Johnson, 104 R.I. 17, 241 A.2d 613, 616 (1968) (wherein reference to the ad damnum clause to the jury was not reversible error, absent a showing of prejudice to the defendants). Reference to a dismissed charge or count to the jury is not prejudicial, as long as the judge issues admonitory instructions that the jury must only consider the evidence at trial, not the dismissed count. Roehl v. State, 253 N.W.2d 210, 217 (Wisc. 1977). The judge "should not mislead the jury as to the evidence or leave the impression that the Court is deciding an issue of fact which is properly for their determination." Miller v.Bessette, 80 R.I. 187, 94 A.2d 253, 256 (1953).
In dismissing Counts V-VII on the spoliation of evidence claims, this Court instructed the jury that they were to make their determination based only on the evidence adduced at trial. Any prejudice which may have occurred from the mention of the dismissed counts was cured by the admonitory instruction. The mention of Counts V-VII also served to clear up any confusion the jury may have had as to evidence presented on the spoliation of evidence claims. As this Court must insure that the jury is not misled by the evidence, its instruction regarding the spoliation of evidence counts did not constitute prejudicial error.
The plaintiffs further argue that this Court erred in refusing to present plaintiffs' proposed instruction number 17 to the jury (assignment of error number three). The plaintiffs argue that the instruction would have prevented the jury from wrongfully speculating on whether the plaintiffs could have brought an action once Peter Marsh's cancer recurred and whether the plaintiffs should be denied recovery now, as Peter Marsh does not currently have cancer. The defendant contends the proposed instruction is not helpful, as the jury already knows the plaintiffs have the right to bring the instant action. The defendant states that the instruction was properly denied because it, in essence, constitutes an argument of the plaintiffs' position. The plaintiffs' proposed jury instruction number 17 read as follows:
 "A. Plaintiffs were required to bring suit within three years of defendant's negligent act or their discovery of it, whether or not Peter Marsh's colon cancer recurred during that three-year period.
 B. If plaintiffs had waited for Peter's colon cancer to recur and/or for Peter to die from recurrent colon cancer to bring suit, the suit would have been dismissed because it was not timely filed.
 C. Regardless of the outcome of this case, plaintiffs cannot bring another suit against defendant when and if Peter Marsh's colon cancer reoccurs or when and if Peter Marsh dies from recurrent colon cancer.
 D. I instruct you regarding this so that you will not speculate regarding whether plaintiffs can bring another lawsuit when and if Peter Marsh's cancer recurs. Nevertheless, this should not affect your decision, which you must base on the evidence presented. Thus, plaintiffs must prove their case to a preponderance of the evidence as I have stated. If they fail to do so, you must find for defendant."
"In charging the jury, the trial justice is obligated to avoid confusing or misleading instructions." Hueston v.Narragansett Tennis Club, Inc., 502 A.2d 827, 829 (R.I. 1986). "A trial court properly exercises its discretion to refuse an instruction when the instruction (1) does not supply needed guidance to the jury; (2) presents an abstract proposition of law not applicable to the issues in the case; (3) is properly the subject of argument for counsel; (4) is erroneously or inaccurately drafted; (5) is not impartial or contains hypothesized facts; or (6) contains dictionary definitions of terms that are used in their ordinary sense." Gallegos v. NewMexico Bd. of Educ., 940 P.2d 468, 477 (N.M. App. 1997).
Several of the above defects set out in Gallegos apply to the plaintiffs' proposed jury instruction number 17. The proposed instruction does not provide helpful guidance to the narrow issues the jury must consider. The instruction is confusing because it puts forth items which the jury may not consider and diverts the jury's attention away from analyzing the specific medical malpractice question. The instruction is also more suitable for argument by counsel. Furthermore, proposed instruction number 17 is not impartial in tone and contains hypothetical facts which could have further confused the jury. For all of the foregoing reasons, this Court feels that it properly rejected plaintiffs' proposed jury instruction number 17.
The plaintiffs next argue, in assignment of error number four, that the Court's reference to plaintiff Peter Marsh's "non-compliant" behavior had a prejudicial effect because the Court, in essence, instructed the jury on the defendant's version of the facts. The defendant responds that this Court simply outlined both parties' allegations in an equal manner in the jury instructions. The defendant states that the Court specifically instructed the jury that it was the jury's task to determine whether such allegations were proven.
"When it becomes necessary or advisable for the court to point up or summarize certain evidence in order to assist the jury in applying the law as given, the trial justice should exercise care to do so fairly to both parties." Miller, 94 A.2d at 253-254. If a judge comments on the evidence in instructing the jury, the judge must issue an admonitory instruction that the jury is the sole trier of fact. Frias v. Jurczyk, 633 A.2d 679, 682 (R.I. 1993).
This Court presented both sides' allegations in an evenhanded manner. The jury was instructed that they were the sole triers of fact. No prejudice occurred from the jury's hearing the Court summarize the defendant's allegation that Peter Marsh was non-compliant, as the Court also summarized the plaintiffs' allegations. A comment from a trial judge may have prejudicial effect only if it "so inflames the passions of the jury as to prevent their calm and dispassionate examination of the evidence." Frias, 633 A.2d at 681. This Court feels that the jury was not prejudiced because the fair presentation of both parties' allegations allowed the jury to decide the matter in a calm, neutral fashion.
For the fifth assignment of error, the plaintiffs argue that the defendant should not have been allowed to testify about treatment events for which the defendant had no memory. The plaintiffs state that there was no foundation for the defendant to testify as to his habit of treating patients. The plaintiffs also state that the defendant could not offer a lay opinion because he had no personal memory of the treatment events in regard to Peter Marsh. The defendant points out that the plaintiffs' counsel asked the defendant many questions about the meaning of his medical notes. The defendant responded to plaintiffs' counsel that he had no memory of the events referred to in the notes, but in looking at the notes now, he could testify as to what he believed occurred based on his standard of practice. The defendant argues that this constitutes permissible testimony and states that the plaintiffs failed to ask the Court to strike the defendant's testimony in regard to his medical notes. The defendant also argues that the plaintiffs' objection on this issue is too vague.
Under Rhode Island Rule of Evidence 406, "[e]vidence of the habit of a person . . . whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit or routine practice." In the medical malpractice context, habit evidence has been admitted in regard to the standard of practice of a physician. See McCormack v.Lindberg, 352 N.W.2d 30, 35 (Minn. App. 1984); Bloskas v. Murray,646 P.2d 907, 911 (Colo. 1982). In Bloskas, the defendant physician had no recollection of informing the plaintiff of the risks and dangers associated with the surgical procedure, but was allowed to testify that "when performing joint replacement surgery on knees and hips, he routinely advised patients of the risks of infection and of the loosening of the implanted devices." Bloskas, 646 P.2d at 910. The Colorado Supreme Court found that such testimony was admissible "circumstantial evidence that, consistent with [the defendant's] routine practice in other types of joint replacement surgery, he did give [the plaintiff] a pre-surgical warning of risks." Id. at 911. In McCormack, the defendant physician had no specific recollection of the operation he performed on the plaintiff, but testified as to his usual practice in performing a "first rib resection" operation. The Minnesota Court of Appeals said, "as long as it is clear that Dr. Lindberg is not testifying specifically about an operation he cannot remember, he should be allowed to tell the jury how he usually performs a first rib resection." McCormack, 352 N.W.2d at 35.
Similarly, this Court finds that the testimony of the defendant in the present case in regard to his usual practice in treating the symptoms occurring in Peter Marsh was admissible under Rhode Island Rule of Evidence 406. The defendant's testimony constituted "habit" evidence of probative value to the jury. The defendant's years of experience as a treating physician provided sufficient foundation for the testimony. Finally, the plaintiffs' assignment of error on this particular issue lacks the requisite specificity for review. "The objection that no foundation was laid for the testimony is too indefinite to raise any question for determination." Russell v. Pitts,123 S.E.2d 708, 710 (Ga. App. 1961). This Court finds that no error of law occurred in admitting the testimony of the defendant as to his usual standard of practice in treating symptoms experienced by Peter Marsh.
The plaintiffs further argue, with assignment of error number six, that this Court erred in preventing plaintiff Peter Marsh from testifying that he would have gone for a sigmoidoscopy if the defendant had referred him. The plaintiffs state that such testimony should have been allowed, as the issue of Peter Marsh's alleged noncompliance with the defendant's instructions was central to the case. The defendant responds that Peter Marsh conceded under cross-examination that he had been told about a "GI specialist." The defendant also points to his own testimony in which he stated that he spoke to Peter Marsh about referral to a gastroenterologist on two occasions. The defendant argues that the Court's exclusion of Peter Marsh's proposed testimony was proper as such testimony conflicted with Peter Marsh's earlier testimony. The defendant also argues that the proposed testimony impacted damages rather than liability, as a referral would have allowed an earlier discovery of the cancer and would have lowered the risk of death for the defendant. The defendant states that the jury never had to decide the issue of damages; thus the above proposed testimony was not relevant.
"It is well-settled in this jurisdiction that the admission of evidence objected to as being irrelevant or immaterial is within the sound discretion of the trial justice." Kelaghan v.Roberts, 433 A.2d 226, 231 (R.I. 1981) (citations omitted). "The exclusion of such evidence will not constitute a basis for reversal unless the trial justice abused his discretion . . . thereby causing substantial injury to the party seeking the admission of such evidence." Id. at 232 (citations omitted). The Court may find substantial injury only if the evidence was relevant and material to a crucial issue and "would have had a probable influence on the jury's verdict or a controlling influence on a material aspect of the case." Id. The party seeking admission of the evidence has the burden of showing that the exclusion of the evidence had a prejudicial influence on the decision. Id.
The proposed testimony of Peter Marsh was immaterial to the issue of whether the defendant negligently failed to diagnose Peter Marsh's cancer. The fact that Peter Marsh would have agreed to a sigmoidoscopy if he had been referred to a specialist does not directly address any diagnostic failings of the defendant. Rather, Peter Marsh's proposed testimony is directed to the issue of damages, as a referral to a specialist may have decreased Peter Marsh's risk of death from a recurrence of the cancer. As the jury never reached the issue of damages, the absence of the testimony had no prejudicial influence on the jury's decision finding no liability for the defendant.
Lastly, the plaintiffs argue, in assignment of error number seven, that this Court erred in refusing to instruct the jury in regard to the loss of society and companionship claims of Sarah and Jonathan Marsh. The plaintiffs argue that the mere existence of the minor children supports a claim for loss of consortium regardless of whether there is any testimony from the children. The defendant argues that the lack of any evidence on the character of the relationship required this Court not to issue an instruction on loss of consortium for the minor children. The defendant states that the assignment of error is irrelevant as the instruction was directed to the issue of damages, and the jury never reached the determination of damages.
"[A] claim for loss of consortium is derivative in nature and inextricably linked to the action of the injured child or spouse." Jameson v. Hawthorne, 635 A.2d 1167, 1173 (R.I. 1994). In Jameson, the plaintiff, a minor child, failed to present testimony that his father and mother incurred any loss of enjoying normal activities with him. Id. at 1172. The Supreme Court upheld the trial court's dismissal of the loss of consortium claims. Id. at 1173.
This Court feels that it properly refused to issue an instruction on loss of consortium because the evidence at trial did not support such an instruction. The plaintiffs did not offer any evidence as to the loss incurred by the children in their relationship with their father, Peter Marsh. "[T]he trial justice should not give a requested instruction if it is not supported by the evidence admitted at trial because such an instruction might mislead or confuse the jury." Frias, 633 A.2d at 684. In addition, the instruction on loss of consortium focused on damages. As the jury never reached the issue of damages, no error occurred in not issuing the instruction on loss of consortium.
Under Super. Ct. R. Civ. P. 59(a)(1) a new trial may be granted "in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state . . ." In the plaintiffs' Motion for a New Trial, the plaintiffs alleged seven errors of law.
For the above mentioned reasons, this Court is unpersuaded by plaintiffs' arguments. Accordingly, the plaintiffs' Motion for a New Trial is hereby denied.
Counsel shall prepare the appropriate judgment for entry.