LARKIN, Judge
Appellant challenges the district court's denial of his petition for a writ of habeas corpus, arguing, in part, that respondent Minnesota Commissioner of Corrections (commissioner) exceeded his authority by using review hearings as a decision-making tool when determining whether to release appellant following his re-incarceration for violating his conditional release. We affirm.
FACTS
In 2007, appellant Steven Leino was convicted of fourth-degree criminal sexual conduct. The district court stayed imposition of sentence and placed him on probation. In 2009, Leino was convicted of third-degree criminal sexual conduct. The district court revoked Leino's probation on his fourth-degree criminal-sexual-conduct conviction and imposed a 21-month prison term and a ten-year conditional-release term. The district court sentenced Leino to a concurrent 51-month prison term and a lifetime conditional-release term on his third-degree criminal-sexual-conduct conviction.
In July 2011, Leino began the supervised-release portion of his sentence. In February 2012, Leino was arrested for failing to cooperate with sex-offender treatment, which violated a condition of his release. The Minnesota Department of Corrections' (DOC) Hearings and Release *480 Unit (HRU) revoked Leino's supervised release, and Leino returned to prison. In August 2012, the commissioner released Leino from prison to an approved residence in Wright County. In December 2012, Leino completed the supervised-release portion of his sentence and began serving his lifetime conditional-release term. He was required to successfully complete sex-offender programming as a condition of release.
In January 2013, the HRU revoked Leino's conditional release for one year and ordered him to complete sex-offender programming while in prison because he had not cooperated with sex-offender treatment in the community. On December 16, 2013 and December 8, 2014, the HRU held review hearings and extended Leino's incarceration for one year and for 240 days, respectively, to give him more time to complete sex-offender treatment. On July 19, 2015, Leino completed sex-offender treatment in prison.
On August 10, 2015, the HRU held a review hearing and extended Leino's term of incarceration for up to 90 days, to give him time to find suitable housing. Leino's supervision was assigned to an intensive supervised release (ISR) team in St. Cloud. On November 9, 2015, the HRU held a review hearing and again extended Leino's term of incarceration for 90 days unless his ISR team could find him suitable housing before then. On December 8, 2015, Leino appealed his continued incarceration to the HRU's executive officer of hearings and release. His appeal was denied.
On February 8, 2016, the HRU held another review hearing and extended Leino's term of incarceration for 30 days unless his ISR team could find him suitable housing before then. On March 14, 2016, the HRU again held a review hearing and extended Leino's term of incarceration for 150 days unless his ISR team could find him suitable housing before then.
On June 23, 2016, Leino petitioned the district court for a writ of habeas corpus, arguing that he was unlawfully detained by the commissioner, the commissioner was not authorized to hold review hearings, and the commissioner impermissibly deferred to counties in determining whether he could release predatory offenders into those counties. On July 6, 2016, the commissioner released Leino to three-quarters housing at the Wright County Detention Center.[1]
On March 28, 2017, the district court held a hearing regarding Leino's petition for a writ of habeas corpus. The district court heard legal arguments, but it did not hold an evidentiary hearing. On June 16, 2017, the district court issued an order denying Leino's requests for habeas relief and dismissing his petition, reasoning that Leino could only obtain habeas relief if he was restrained because of a constitutional violation and that the commissioner did not violate Leino's substantive due-process rights by detaining him.
Leino appealed to this court. The commissioner moved to dismiss the appeal as moot and supplement the record with exhibits establishing that the commissioner had released Leino to live with family in Hennepin County. This court denied the commissioner's motions, reasoning that the appeal "survives the mootness doctrine" because the issue of "the lawfulness of the DOC's use of review hearings" in administering *481 supervised and conditional release and re-incarceration "is capable of repetition and may evade review."[2]
ISSUES
I. Is Leino's appeal moot?
II. Is the DOC's use of review hearings in administering re-incarceration of offenders for violations of conditional release lawful?
ANALYSIS
I.
The mootness doctrine is based on the principle that "[appellate courts] do not issue advisory opinions, nor do [they] decide cases merely to establish precedent." Jasper v. Comm'r of Pub. Safety , 642 N.W.2d 435, 439 (Minn. 2002). "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Dean v. City of Winona , 868 N.W.2d 1, 4-5 (Minn. 2015) (quotation omitted). An action "should be dismissed as moot when a decision on the merits is no longer necessary or an award of effective relief is no longer possible." Id. at 5.
An exception exists when an issue "is capable of repetition, yet will evade judicial review." State v. Brooks , 604 N.W.2d 345, 347 (Minn. 2000). "[T]his exception to the mootness doctrine is flexible." Id. "Appellate courts also consider whether the issues presented are important public issues of statewide significance that should be decided immediately." Id at 348 (quotation omitted) (reaching the merits of the case because the issue was "capable of repetition, likely to evade judicial review, and an issue of statewide significance" based upon the fact it reached the court twice in one year).
The commissioner argues, "Because of Leino's release to Hennepin County, this Court is unable to grant Leino effective relief." In denying the commissioner's motion to dismiss Leino's appeal as moot, this court recognized that, because Leino had been residing in Hennepin County under ISR since May 2017, the specific relief he sought appeared to have been granted. State ex. rel Leino v. Roy , No. A17-1278 (Minn. App. Sept. 13, 2017) (order). However, we noted that Leino's "statement of the case includes challenges to the lawfulness of the DOC's use of review hearings." Id. We indicated that this court "ha[d] been asked to consider challenges to the DOC's administration of supervised and conditional release and re-incarceration, as well as the DOC's use of review hearings, in other appeals, so [Leino] has raised an issue that is capable of repetition." Id. We explained that "[t]his issue may evade review if the DOC continues to release offenders who have been re-incarcerated during their supervised or conditional release terms after the offenders challenge their incarceration by habeas [petition]." Id. We concluded, "Because this issue is capable of repetition and may evade review, the appeal survives the mootness doctrine." Id.
"No petition for rehearing shall be allowed in the Court of Appeals." Minn. R. Civ. App. P. 140.01. We have applied that rule to foreclose reconsideration of an issue that a special term panel of this court decided prior to considering the merits of an appeal. See In re Estate of Sangren , 504 N.W.2d 786, 788 n.1 (Minn. App. 1993) (declining to consider issue previously addressed by this court at special term), review denied (Minn. Oct. 28, 1993). We *482 therefore will not reconsider this court's prior order regarding the commissioner's mootness challenge. However, because this court's conclusion that this appeal is not moot was limited to the lawfulness of the DOC's use of review hearings in administering supervised and conditional release and re-incarceration, we limit our review accordingly.
Although Leino challenged the legality of the DOC's use of review hearings in the habeas proceeding in district court, the district court did not expressly address this issue in denying Leino's petition. This court generally considers "only those issues that the record shows were presented [to] and considered by the [district] court in deciding the matter before it." Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988). An appellate court, may, however "decide an issue not determined [in the district court] where there is no possible advantage or disadvantage to either party in not having a prior ruling on the question." In re Expulsion of A.D. , 883 N.W.2d 251, 261 (Minn. 2016) (quotation omitted). "Parties are not disadvantaged when the previously unaddressed issue involves a question of law and the parties had an opportunity to brief the issue." Id.
The application of a statute to undisputed facts presents a question of law reviewed de novo. State v. Minn. Sch. of Bus., Inc. , 899 N.W.2d 467, 471 (Minn. 2017). Although the facts regarding the particular circumstances of this case are disputed, the DOC's regular use of review hearings as a decision-making tool regarding re-incarceration of offenders for violating conditional release is undisputed. Therefore, we review the application of law to the DOC's use of such review hearings de novo. And because the parties have briefed the issue,[3] we address it.
II.
Leino contends that neither the statutes governing conditional release nor the relevant DOC administrative rules authorize the DOC's use of review hearings to extend his incarceration. We therefore review those authorities.
When a district court commits an offender to the custody of the commissioner for the offender's first conviction of criminal sexual conduct, other than fifth-degree criminal sexual conduct, "the court shall provide that, after the offender has been released from prison, the commissioner shall place the offender on conditional release for ten years." Minn. Stat. § 609.3455, subd. 6 (2016). If the offender has a prior sex-offense conviction, the commissioner "shall place the offender on conditional release for the remainder of the offender's life."[4] Id. , subd. 7(b) (2016).
The commissioner may establish conditions of release, which "may include successful completion of treatment and aftercare in a program approved by the commissioner, satisfaction of [ISR conditions], and any other conditions the commissioner considers appropriate." Id. , subd. 8(a)-(b) (2016). "If [an] offender fails to meet any condition of release, the commissioner may revoke the offender's conditional release and order that the offender serve all or a part of the remaining portion of the conditional *483 release term in prison." Id. , subd. 8(c) (2016). The commissioner has "broad discretion" in making conditional-release decisions, including the imposition of release conditions. State v. Schwartz , 628 N.W.2d 134, 142 n.4 (Minn. 2001).
"The commissioner of corrections shall adopt by rule standards and procedures for the revocation of supervised or conditional release, and shall specify the period of revocation for each violation of release. Procedures for the revocation of release shall provide due process of law for the inmate." Minn. Stat. § 244.05, subd. 2 (2016). The commissioner may designate staff members to act as hearing officers and delegate his conditional-release supervision duties to those staff members. Minn. Stat. § 243.05, subd. 4 (2016). The commissioner has established rules to effectuate the commissioner's supervision of offenders on conditional release, including the creation of the HRU. Minn. R. 2940.0100 - .5700 (2017). These rules allow the commissioner, through the HRU, to conduct progress reviews regarding each offender on conditional release, restructure conditions of release, and revoke an offender's conditional release for violating the attendant conditions. Minn. R. 2940.1700, .2700, .3800. The DOC's rules also require the HRU to conduct annual progress reviews regarding each inmate within the commissioner's jurisdiction to assess, modify, and develop conditions of release as appropriate. Minn. R. 2940.0900.
Leino argues that the "phrase 'review hearing,' as used in the context of [his] hearings, appears to be invented by the hearing officers, as it does not exist in the administrative rules or in Minnesota statute." He notes that Minn. R. 2940.0100, the relevant definitional rule for the rules and procedures regarding the HRU, defines "revocation hearing," but it does not define "review hearing," and that the term "review hearing" only appears in Minn. R. 2940.1800, a rule regarding inmates with life sentences. Leino is correct: the review hearings in this case are not expressly authorized by statute or administrative rule. We therefore consider whether the DOC nevertheless is authorized to use such hearings when determining whether to release an inmate who has been re-incarcerated for a violation of conditional release.
As to that issue, Leino argues that extending an offender's incarceration after a review hearing is inconsistent with Minn. R. 2940.3800, which provides:
Offenders who have violated the conditions of parole or supervised release and who have been returned to institutional status shall be assigned a release date and a term of reimprisonment, as follows:
A. up to six months inclusive of any time spent in jail in connection with the violation, for violations of conditions of parole or supervised release other than convictions of or involvement in criminal activity;
B. up to six months for convictions of misdemeanors or gross misdemeanors;
C. six months to expiration of sentence for conviction of a felony; and
D. depending on the time remaining to be served on the sentence, the type of violation, and the needs of the offender, up to expiration of the sentence may be assigned as the term of reimprisonment if there is a finding of risk to the public or if repeated violations of the conditions of release occur and the releasee is determined to be unamenable to supervision by the executive officer of hearings and release.
The term of reimprisonment under items A to C may be either concurrent or consecutive to incarceration time imposed *484 by a court of law and served locally.
Leino emphasizes that under Minn. R. 2940.3800, "individuals who [have] their supervised or conditional release revoked must be assigned a release date and a term of imprisonment." Leino similarly notes that Minn. Stat. § 244.05, subd. 2, provides that the commissioner "shall specify the period of revocation for each violation of release" and that Minn. R. 2940.0100, subp. 28, mentions "setting the term of reimprisonment to be served by the violator" as a purpose of a revocation hearing. Leino argues that the rules and statute "do not provide that the release date or term of reimprisonment can be altered at a later date after [a] revocation hearing has concluded." Leino further argues that once revoked, "the administrative rules and Minnesota statute allow an inmate's sentence to be extended for one reason, and one reason alone: if that inmate commits an offense in prison that causes them to be placed in segregation." See Minn. R. 2940.1600, subp. E ("All violators of supervised release shall have their projected release date extended by one day for each three days of segregation time served.").
Although Minn. R. 2940.3800 requires the commissioner to assign a release date and a term of reimprisonment for an offender who has violated the conditions of parole or supervised release, the rule does not require the commissioner to release the offender on a specific release date. In fact, DOC rules do not require a guaranteed release date in those circumstances. Instead, they provide for a "projected release date," defined as "a date in the future at which an inmate will be released providing the inmate's behavior is satisfactory, the release date was based on complete and accurate information, and the inmate is not considered to be a risk to the public at the time of release." Minn. R. 2940.0100, subp. 21. The only clear limitation on the commissioner's ability to incarcerate an offender following revocation of the offender's conditional release is expiration of the offender's conditional-release term. See Minn. Stat. § 609.3455, subd. 8(c) (limiting incarceration following revocation of conditional release to the remaining portion of a conditional-release term). Thus, the relevant DOC administrative rules give the commissioner significant discretion in determining when to release an offender following re-incarceration for violating conditional release.
Moreover, the DOC's use of review hearings to evaluate whether, given the offender's behavior and the relevant circumstances, it is appropriate to release the offender at the offender's projected release date is consistent with Minn. Stat. § 244.05, subd. 2, which requires the commissioner to "specify the period of revocation for each violation of release" and establish procedures for the revocation of release that "provide due process of law for the inmate." Procedural due process requires notice and an opportunity to be heard. Sawh v. City of Lino Lakes , 823 N.W.2d 627, 632 (Minn. 2012). Specifying the period of revocation provides an offender notice of the projected length of his incarceration. A review hearing provides the offender an opportunity to be heard regarding his projected release or continued incarceration.
In sum, although the relevant statutes and DOC administrative rules do not expressly authorize review hearings in the context of the DOC's administration of re-incarceration of offenders for violations of conditional release, such use of review hearings is consistent with the relevant statutes and DOC administrative rules. We discern no basis to declare the DOC's use of review hearings in this context unlawful.
*485 In fact, this court has consistently rejected challenges to the DOC's authority to extend projected-release dates following review hearings. See, e.g. , State ex rel. Martinez v. Roy , No. A16-1604, 2017 WL 2063009, at *4 (Minn. App. May 15, 2017) (concluding that the use of review hearings is consistent with the DOC's authority to review an inmate's progress while on supervised release, restructure release conditions, revoke an inmate's release for violating conditions of release, and "conduct progress reviews ... to assess, modify, or develop conditions of supervised release"); State ex rel. Costello v. Roy , No. A11-1283, 2011 WL 5119379, at *3-4 (Minn. App. Oct. 31, 2011) (noting that there is nothing in the text of Minn. R. 2940.3800"stating that [a hearing officer] may not extend a projected release date more than once" and that "[p]aragraph D of the rule provides [a hearing officer] with flexibility to extend a term of reimprisonment up to the expiration of sentence, if there is a finding of risk to the public"); State ex rel. Melin v. Fabian , No. A07-0355, 2007 WL 1532222, at *2-4 (Minn. App. May 29, 2007) (upholding DOC's extension of offender's re-incarceration to the expiration of offender's conditional-release term), review denied (Minn. Aug. 7, 2007). Although these unpublished decisions are not precedential, they influence our decision. See Dynamic Air, Inc. v. Bloch , 502 N.W.2d 796, 800-01 (Minn. App. 1993) (noting that although unpublished opinions of this court are not precedential, they may be persuasive).
For the reasons set forth above, we hold that the DOC's use of review hearings in administering re-incarceration of offenders for violations of conditional release is lawful.
DECISION
The DOC's use of review hearings as a decision-making tool when determining whether to release Leino or extend his incarceration following his re-incarceration for violating conditional release was lawful. Because this issue is the only issue that survived the commissioner's motion to dismiss this appeal as moot, we affirm without addressing Leino's other arguments.
Affirmed.

In "three-quarters housing," an offender is housed at a local jail, "with day passes to look for employment, hold a job, and search for suitable non-detention housing." Offenders in three-quarters housing can also visit family, attend religious services, go to medical appointments, and drive a vehicle.

State ex. rel Leino v. Roy , No. A17-1278 (Minn. App. Sept. 13, 2017) (order).

Indeed, Leino argues: "This court has yet to issue a published and precedential decision analyzing the DOC's use of 'review hearings,' and should do so now."

An offender may not be placed on lifetime conditional release following a conviction of fourth-degree criminal sexual conduct unless the offender's prior sex-offense conviction was a conviction of first-degree, second-degree, or third-degree criminal sexual conduct or criminal sexual predatory conduct. Id. , subd. 7(c) (2016).